## Case No. 5,705.

### The GRATITUDE.
### The ABNER TAYLOR.
[4 Ben. 62.] [1]

District Court, S. D. New York. Feb., 1870.

COLLISION IN THE KILLS—STEAMBOAT AND SCHOONER.

1. A steamboat, with a canal boat in tow, fastened to her port side, was coming through the Kills from Elizabethport to New York, on the right hand side of the channel. When near the corner stake, where the channel turns, a schooner coming the other way, having the wind free, came in collision with the canal boat. The steamboat, as soon as she saw there was danger of collision, stopped, and backed, and put her wheel hard a port. The schooner claimed that she was on the other side of the channel, and had caught on the mud, so as to be stationary, and was run into by the steamboat. A libel was filed against the steamboat and schooner, by the owner of the canal boat, and the insurer of the cargo, to whom it had been abandoned. *Held*, that, on the evidence, the steamboat was on the starboard side of the channel, and the schooner had the whole channel, and was not so aground as to be stationary.

2. The schooner was in fault, in keeping her helm to starboard, after rounding the corner stake, and was solely responsible for the collision.

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

In admiralty.

Emerson, Goodrich & Wheeler, for libellants.

Beebe, Donohue & Cooke, for the steamboat.

E. D. McCarthy, for the schooner.

BLATCHFORD, District Judge. The libellant Lynch was the owner of the canal boat Uriah, and White, Fowler and Snow were the owners of a cargo of coal, which was on board of her, on transport from Elizabethport to New York, at the time of the collision hereinafter mentioned. The other libellants were insurers of the coal, and, after the collision, the coal was abandoned to them, and the abandonment was accepted by them. The Uriah was in tow at the time of the steamboat Gratitude, being lashed to the port side of the Gratitude, and bound from Elizabethport to New York. The collision occurred about noon on the 1st of October, 1868, between the Uriah and the schooner Abner Taylor, which was bound from New York to Elizabethport. The place of collision was in the Kills, near what is known as the corner stake between Shooter's Island and Elizabethport. The libel alleges that the wind was about north by east; that the schooner was on her port tack, with her three lower sails set; that the schooner, with the bluff of her port bow, struck the bluff of the port bow of the Uriah so violent a blow, that it was manifest she would shortly sink; that thereupon the steamboat towed her to the flats, where she shortly sank; and that the collision occurred wholly by the fault of the persons navigating the steamboat and the schooner.

The answer of the steamboat says, that the collision happened without the fault of those navigating the Uriah, and without the fault of those navigating the steamboat, but solely through the fault and negligence of those navigating the schooner; that the wind was from the northward and eastward, and free for vessels bound towards Elizabethport; that the steamboat and the Uriah proceeded along the right hand side of the channel, as near to the bank as the steamboat could with safety be navigated, leaving the whole channel to the northward and westward clear to vessels bound in an opposite direction; that the way of the steamboat was very slow by the land; that, before she had reached the corner stake, which marks the south bank of the channel, the schooner turned the stake, bound towards Elizabethport, having her lower sails set, her boom off to port, and the wind free, and sailing at a rapid rate of speed; that, notwithstanding she had the whole channel to the northward and westward of the steamboat and the Uriah, and had plenty of room, by keeping her course, to clear the steamboat and the Uriah, it was found that she was bearing down upon those vessels, by starboarding, so as to make it certain, if

she persisted, she would strike the Uriah; that immediately a single whistle was blown by the steamboat to call attention, the wheel of the steamboat was put hard a port, and her engine was at once slowed, stopped and backed; that, notwithstanding this, the schooner came down upon the bow and stem of the Uriah, the port bow and stem of the schooner striking the port bow and stem of the Uriah, and thereby damaging her so that she sank shortly afterwards; that the force of the blow drove the steamboat upon and against the bank of the channel on the starboard side; that, at the time of the collision, the steamboat had no headway on, but, if anything, had stern way on her; and that the collision happened solely by the schooner's not keeping her proper course through the channel. ·

The answer of the schooner says, that, while she was rounding the corner stake, she got aground, by reason of the narrowness of the channel at that place, and through no fault of those in charge of her; that, before rounding the stake, she was making not more than four knots an hour; that, after rounding the stake, and at least five minutes before the collision, the schooner became almost stationary, her keel sank into the mud, and she was wholly unmanageable; that, while she lay in the mud, the steamboat, having in tow the Uriah, was observed coming down the channel, and several rods distant from the schooner; that the schooner lay completely out of the channel; and, as could have been very easily observed by those having the Uriah in tow, was entirely helpless; that the persons in charge of the schooner called out loudly to those in charge of the steamboat and the Uriah, that the schooner was aground; that they paid no attention, but kept directly on a course which bore directly against the schooner, until they were so near the schooner that it was impossible to avoid running into her; that, after the schooner got aground, the persons having the Uriah in charge had ample time within which to slacken the speed of the steamboat, or to stop fully, and, in either case, to avoid the collision; that there was ample width of channel to enable the steamboat and her tow to clear the schooner; that, if the steamboat had been handled properly, and in a seamanlike manner, she and her tow could have gone entirely free; and that the collision was owing entirely to the carelessness of those in charge of the steamboat and the Uriah.

The main dispute, on the evidence, is, as to whether the collison occurred near the windward bank of the channel or near the leeward bank of the channel. It is insisted, for the schooner, that she was dragging along the windward bank, trying by starboarding, to get off from that bank into deeper water, and that the steamboat pushed the Uriah against the schooner. It is in-

sisted, for the steamboat, that the steamboat and the Uriah were close to the leeward bank of the channel, and that the schooner, after she rounded the corner stake, kept on starboarding, and ran into the Uriah, and then ported and ran across to the windward side of the channel and got aground there. The weight of the evidence is, that the wind was northeast; that the course of the channel, from Shooter's Island to the corner stake, is about northwest; that the schooner had the wind free, her booms to port, and her sheets half off, before she reached the corner stake; that the turn at the corner stake is pretty sharp, say five points, from northwest to west by south; that the schooner had the wind still more free after she turned the stake; that the collision happened some three hundred feet towards Elizabethport from the corner stake; that the channel, at the place of collision, is sufficiently wide for two steamboats, each with two canal boats on each side, to pass each other in safety; and that the steamboat and her tow were on the leeward side of the channel, that is, the right-hand side to them as they moved forward. The master of the schooner says, that he put his wheel to starboard before he reached the stake, and kept it hard a-starboard until the collision, and had had it hard a-starboard for from six to ten minutes before the collision; that he had his mainsail, foresail, jib and flying-jib set; that he put his wheel to starboard, because he found that the keel of his vessel was in the mud; and that she kept going along with her keel in the mud. I am satisfied, on the proofs, that the steamboat and the Uriah were as close to the leeward side of the channel as they could be, and that the collision happened through the fault of the schooner, in keeping her helm to starboard. She, doubtless, with the aid of the wind and her starboarding, left the mud, and crossed over, and came against the Uriah, without her master being aware of the consequences that were to follow his persistence in starboarding. The answer of the schooner avers that she got aground, and that, at least five minutes before the collision, she became almost stationary, and was entirely helpless. This is wholly untrue. The master of the schooner testifies, that, at the collision, she was going at the rate of about a knot and a half an hour, and that his vessel kept going along with her keel in the mud. If her helm had been ported, and, notwithstanding that, she had been driven against the Uriah, there might have been some excuse for her; but so long as the steamboat and the Uriah were on the leeward side of the channel, nothing but the starboarding of the schooner could have brought about a collision, if, as is claimed for the schooner, her keel caught the mud on the windward side of the channel, by her luffing up to the windward, before reaching the corner stake, to let another vessel pass

on her port side. Such starboarding by the schooner is admitted, and, on the facts, must be held to have brought about the collision. The steamboat slowed, stopped, and reversed her engine, .after the schooner rounded the stake, and had sternway on at the collision, and she and the Uriah were shoved around by the blow to the starboard, so that, by going ahead, the Uriah, which projected forward beyond the steamboat, was shoved upon the flats.

The libel must be dismissed as to the steamboat, and there must be a decree for the libellants against the schooner, with a reference to a commissioner to ascertain the damages.